Good morning, your honors. Trace Carrillo on behalf of the appellants, Christopher S. etc. This case concerns a county school district's decision to shorten the classroom time of its disabled population in the autism program for nothing more than budgetary purposes. There is no evidence in the file and there was never raised an affirmative defense in this case that the non-disabled students in the three districts that are defendants in this case were also, had this policy also applied to them. This policy was made applicable to the disabled autistic students only and constitutes an intentional discrimination in violation of both the ADA and section 504. This is a discrimination case. This is not an idea case. The fact that the basis for the decision was budgetary in nature is replete in the file. And I want to ask your honors if you would turn to Appellants' Excerpts of Record, page 23, which is the compliance complaint that was filed by Christopher S.'s mother when the first notice came down at a meeting with parents and administrators for the autism program in which it was reported that they would be getting a minimum day every Tuesday. And the district administrator in that compliance complaint, she enumerates the reasons that were given by the administrators of the program during that meeting. The district essentially asked the parents to support this because, and I quote, they didn't have enough money in the school budget to pay for overtime to train one-on-one tutors and pay for consultants to cover the classrooms. School administrators referred to the children's sacrifice for the benefit of the program. There is no evidence elsewhere that non-disabled students were also required to make that same sacrifice. This case was dismissed, apparently on a motion to dismiss, right? Actually, it was ‑‑ I think that was to a spot by the judge after a motion to ‑‑ for a preliminary injunction in which the exhaustion issue was raised. What did he have in terms of, you know, any factual material? What did Judge Call have before him besides the complaint? Like, for instance, were the IEPs, did he have copies of the IEPs? Yes. What all did he have? In our motion for a preliminary injunction, there were exhibits to that motion in which the compliance complaint, the answer to the decision of the compliance unit finding the defendants out of compliance, and the IEPs for two of the three students. I didn't attach the third one because I thought they were just indicative or demonstrative only, in which he could have looked on there and said, is a shortened day indicated on that IEP? That was the only thing we were asking him to do. So all that evidence was in front of him. Well, so he looked at the IEPs? Yes, he ‑‑ He drew some conclusion about some relationship between this action and the provisions of the IEPs? I don't believe so. I think if you look up, I believe it's on page 13 of his decision where he talks about that it was going to be ‑‑ that we were asking him to determine the implementation of the IEP. And that's, I think, where the error was made. We were not asking him to implement any IEPs, to make any determination as to content of the IEP. There was never an individualized determination that any of these children required or was otherwise justified to have a shortened day. Well, I think ‑‑ I don't think he made that conclusion, but he said that conclusion could affect the result in this case if, in fact, the IEPs ‑‑ I don't want to prejudge a different issue, but the argument here is over whether the lunch and recess periods can count. And he said that if the IEPs said they would count as instructional time, then there isn't a legitimate claim for saying that the students in this program had a shorter day than the students outside the program. Isn't that part correct? I believe that he was ‑‑ he was under the erroneous understanding that he was going to have to look at the goals and objectives and determine if those could be carried out during lunch and recess. And that, I think, is the error. We weren't asking him to look at the goals and objectives and find out when and when was the most appropriate time during the day that those goals and objectives were being carried out. We were just asking him to look facially. But it isn't what you're asking him to do. It's what he has to do to resolve the case. And what the defendants were saying is that if the IEPs either said or implied that appropriate instruction could take place during the lunch and recess periods, then the assertion that your client was making would not win out because it would not be the case that the day had been shortened as compared to the students outside the program. But that's the problem with the case. You can't imply it by the contents of the goals and objectives. It has to be specifically stated on the IEP that the child is getting a shortened day for the following reasons. Well, well, you know, but one of the questions is who should make that decision as to whether it's, you know, implied or not. But beyond that, I read somewhere here. Maybe you make the assertion in your brief. I don't know. But that in order for this time to be counted as instructional time, that some kind of certificated personnel has to be present and that it was not the case here. Now, did Judge Coyle, I mean, did he look into that issue? Now, that seems to me to be, you know, a mechanical issue that doesn't require any educational expertise. That's absolutely true. And that wasn't the case. But did he look into it? My question is, did he look into that issue? There is no mention of that in his decision. And that's true. Education Code 46-300A requires for an instructional minute to count for it to be a certificated teacher. And in Deborah Brown's declaration, she talks about one of the aides being designated a teacher during those periods of time. So even if you were to make an argument that this was indeed an IDEA case and not a discrimination case and we were subject to 1415L for some reason, that doesn't even count as an instructional minute. So but I think we need to go back to the stated reasons why this decision, why this policy came down from the top to begin with. And that was it was clearly budgetary in nature. Jim Norby's declaration, he talks about a union contract of six hours only for the instructional aides, making it impossible for them to get training other than on the children's time. And this is what they're doing. That's the sacrifice that they were going to have to make as opposed to non-disabled children. And Pat Diamond's declaration, a letter that she had written to compliance, is in the file as well. And she talks about financial – I'm not sure that that gets you where you need to get to. Take a hypothetical. I'm not saying it's the facts of this case. Suppose you have a school district where for autistic children they have a program that's actually an hour a day longer than for other children. And for undeniably budgetary reasons, they eliminate that so that they don't have the extra hour anymore. It's the same. Is there a discrimination case there? No. I don't believe there would be. Because all we're asking for is the requirement of 54,000 minutes a year. We're not even getting that. As opposed to the non-disabled population, they're getting the 54,000. I understand what you're saying. That's where we get back to the lunch and recess issue. But that's – Because if the school district can make out the case that time counts, my understanding is there's no longer a disparity. But it can't – they cannot make a case that that time counts unless it's otherwise justified, indicated on the IEPs. The IEPs facially do not address the shortened day issue. No, but – I want to make myself clear here, because if I'm not communicating with you, then you're not going to communicate with me and you're not going to get where you want to go to. Your premise is the day has been shortened. But just shortening the day isn't a violation. You just told me that. Because if the autistic children had more time to begin with and they reduced it for budgetary reasons to the same time, you don't have a discrimination claim. That's right. Well, I don't think the school district is arguing that an affirmative part of the IEP is to reduce the day. I think what they're saying is under the IEPs, the activities that take place during lunch and recess are appropriate. And if they are appropriate, then there's no discrimination because the autistic children and the non-autistic children are at the same level. I'm not saying I agree with that, but I think you have to address in some fashion the possible need to examine the IEPs to deal with the argument that the school district is making. There are three regulations in Title V. They all say exactly the same thing. Thou shalt not give a shortened day to disabled kids unless otherwise indicated on the IEP. But that presumes the day is shortened. And my question presumes the day is not shortened, is not lower. It's been reduced, but reduced to the same level as the other children. In your hypothetical. But that's what the state in essence seems to be saying here, or rather the county seems to be saying here. They're saying that if you count that lunch and recess time, which concededly you can't for the non-autistic children, but if they say instructional activities take place during that time for the autistic children, then the autistic children are not getting a day that's shorter than the other children. But there was no individualized determination that each of these childs should get or have this, there's any instruction going on in any of those lunch and recess minutes that allow them then to shorten that day. Does it require the examination of the IEP? No. All it requires is for the judge to look and see if there is any indication on there that the day is shortened and why. You know, the thing is, is that the length of a day Not shortened, shorter. There's a difference. Shorter. You conceded in the hypothetical that they can reduce the day as long as they didn't reduce. Well, is there anything he can make the conclusion to say the day is shorter without determining whether or not for the autistic children the lunch and recess period can count? Yes, he can look on the IEPs and if there is any verbiage in there that says we are making the day shorter or we are counting lunch and recess as instructional minutes for the following reasons, and this is what's going to go on during those periods of time, that's all he needs to do. But that's the problem. I mean, I think that's what the state's argument is and the reason Judge Coyle thought that exhaustion was going to be required because you just said he's got to look at the IEPs. But only a facial review of the IEPs. There's nothing. He doesn't have to look at the substance of the program. He doesn't have to look at placement issues, identification, evaluation, doesn't have to do any of the things that a due process judge would do. That's why the compliance complaint was the appropriate remedy here. In terms of giving notice to the district of their error and to have an opportunity to correct that error, there was plenty of that in the compliance complaint. When you say he doesn't have to, you know, interpret the IEP, but just look at it, well, what does that mean? You mean the IEP would say, you know, lunchtime instruction and how to eat or something like that? If it says words like that, that's all you have to do? You mean the judge? The length of a child's day within special education is sacrosanct. It's got to be on that IEP specifically that the child is getting less minutes because of the following reasons. And there's got to be, there has got to be. Well, let me ask this question. What does the two IEPs that are in the record, what do those IEPs say, if anything, about the lunch period? Nothing. It's silent about lunch. It's not mentioned? It is silent about lunch period. It is silent about recess. Look at this. Is every other minute of the school day covered by the IEP except lunch and recess? Yes. I mean, know what this says? Yes. This will happen from, you know, 8.15 to 11.45? No. No, it's not that specific. It's not that specific. But there's nothing in there. There's one indication where the kids will microwave. But in Rita Schultz's record... That's a lunch activity, isn't it? That's a lunch activity, but that's not the lunch period. That's done in the classroom, and then they go to lunch. And another thing, I mean, these are disabled children. I mean, other children are allowed time to go out and run around and not have the intensity of their instructional minutes. But that's, I think, an entirely different issue. Okay. I think. If the lunch period and the recess period does, in fact, qualify for socialization and does, in fact, count, which would be something that could better be determined perhaps by a due process hearing, an administrative proceeding, what is the remedy you seek in that situation, simply having it put on to the IEP? Because you're saying, if the IEP, it doesn't count, what's the remedy you seek in that circumstance? The remedy we're seeking is that the children are allowed to go to school at the same amount of time as any non-disabled child goes to school. And if the district wants to come in on an IEP and make an affirmative showing why, for some limited period of time, these lunch and recess minutes are going to be counted as instructional minutes, then the parent has an opportunity to object to that and go to due process. But that's an individualized determination. This was a policy for budget reasons that was applied. But regardless of who takes the initiating step, isn't it first and foremost a decision that ought to be made at an administrative level? No. These decisions have to be individualized. When you start cutting out children's time and lunch and recess minutes, the three regulations say, unless otherwise indicated on the IEP, the burden is on the district to come to that IEP and make proof to the parent why she should allow her child to go a lesser time than other children, because this is what's going to be happening during lunch and recess. And she has a decision to agree or not to agree with that. There's a letter that goes out four years in a row now that says, this is your child's time, period. We've got about five minutes left. Do you want to reserve it? I think I'm going to keep that for a rebuttal. Thank you, Your Honor. Thank you, Jeff Olson for the Stanislaus County Office of Education. First of all, there's been a contention here that you must specifically state in the IEP if you're going to have a shortened day. And if you take a look at it, there's two California Code of Regulations sections, 3053B2 and 3001 subsection Q. They both basically say the same thing, that if the student can't attend the full day of school, then that must be stated in the IEP. And in this particular case, the students are being provided a full day of school each and every day in these autistic classes. Some days are minimum days, and they're attending them all day. When you say they're being provided full days, you include the lunch period. Are you including the lunch period? Well, we are, yes. And we have all along. But what I'm saying is that if, in fact, these students are going to be provided a shortened day of that particular school program, and all schools have a certain number of minimum days, and if the students are attending that entire school day, then that's fine. But if they're going to attend for a shortened part of that day, maybe a half of that minimum day or a half of a full school day where they go the entire day, then that part has to be specifically. And so I think that's where it's not a requirement that they have to say in these IEPs that these kids are going to be attending less than a full day in these autistic classes. Well, there was a reduction in the day for the autistic class. Is that correct? Yes. And the reduction wasn't based on individual plans or needs. The county had to save money someplace, or the school districts had to save money. And this is one of the places they made the cut, believing they could do so lawfully. But it was done as a group thing. Yes, there was a change in school hours of these programs. And school districts and offices of education can change their school days. They can change the numbers of minimum days that they're going to have in the school year. No, but it's not the question of change. The question is, was it changed so that they get less education than the non-special education, right? Is that the question here? Well, the effect of this change was to have more Tuesday minimum days. And the reason why they did that. Well, it's not that more. It was more for the autistic, but not more for the other people. Isn't that the complaint? When you look at. Well, that's a complaint, isn't it? Well, that's that's their complaint. That when was that true that they're getting less time than, you know, the non-autistic. Is that true? When you when you compare the numbers of instructional minutes per year before that change and after that change, that is correct. You got a reduction in the instructional minutes. But what you have to do is compare then the number of total instructional time that these autistic kids are now getting compared to what their home schools get. And. And to do that, it's the county's position that, well, you can include the lunch hour and the recess period, right? The county has always said that in this particular case. And when you look at. Can I ask this question? Is it true, as the plaintiff contends, that state law and regulation prohibits counting time as educational unless a certificated or credentialed teacher is present? Well, that's an issue. Does the state educational code provide that? It does provide that. But you've got to look at where. You're present during the during the lunch period there. It depends on how close that teacher is. There are times when it comes out of a room. I think that's I think that's a factual issue in this case is the extent to which the teachers were available when the aides are there and the aides are there with these kids all the time. Well, what was there? Was there like a declaration submitted on this or there? That issue was never that that factual matter was never set. So your position that a teacher is present is required, at least to the extent required by the educational code, as you as you interpret the code? Present, meaning in the area, not being close to that student or even in that room at the time. The way you interpret the educational code, the schools comply. In other words, the teacher is close enough. Yes. All right. Do you think when that issue is examined, whether it's by a due process hearing or by a court, you're going to survive the examination? Yes, I do. And I think that that is something that needs to be dealt with at the due process hearing. It's a factual inquiry. How close to the teacher? Like eating lunch in the teacher's lunchroom? Is that what you mean? I honestly don't know exactly how close the teachers were. How can you make the assertion if you don't know? Each and every day, I don't know exactly where these teachers were. There's an allegation that they weren't, that hasn't been looked into in detail. The aides were there, close by the kids, as they are all the time. Now, whether or not the teachers are close enough to the lunchroom to deal with the situation and that complies, I still think that's a factual issue. I think it's a factual issue that needs to be dealt with at the due process hearing. As is all these other issues of whether or not the goals and objectives set forth in these IEPs are being carried out during the lunch and recess time. I mean, that's where the court does not have a factual record to deal with. And those are the kind of things that should be dealt with at the due process level initially. Number one, to give the local agencies an opportunity to correct the problem if there is one. And number two is if there isn't, then the issue's been resolved. Wasn't there, one, a determination by, not a due process, but some other kind of administrative hearing that the county office of education was in violation? That was the complaint resolution process that they did go through, which is a totally different process. It's one that's available, but not part of the requirement for exhaustion of due process. Gone through and there was a finding violation was made, and then something else happened after that, right? There was no understanding during that process that lunch and recess time was being counted, and it was all along. Well, it wasn't there. Well, I don't know what the breakdown was, but there is the declaration of Ms. Diamond in my excerpts, and she indicates in there early on when she communicated with the CRP unit that they were including lunch and recess. It was never a misunderstanding from the office of education's position from day one. Now, when I took the depositions of the two individuals involved in the investigation of the CRP unit, they didn't remember that, and they said they didn't have an understanding that lunch and recess was being counted, and it was never an issue that was ever really addressed by that unit. And I think Judge Cole made that clear in his opinion that it wasn't an issue that was decided by that particular process. But so as a result of that, I mean, did the state do something else? I mean, did they come back and say, well... No, the state assumed that they were in full compliance, and there was never any further action taken whatsoever. So it was never brought up again, and, you know, the state in that... So what you're saying is as a result of further, I'll say further facts coming to the their most recent determinations, well, Stanislaus County appears to be in compliance, something like that? Yes, yeah, and even after the deposition was taken, and it was clear through that that maybe they made a mistake. Nothing has been done with that unit on this case at all. It just has not been pursued. Say, well, did they make some kind of a specific ruling? They mean the state officials that it's appropriate or proper to count the lunch and recess time? No, that issue was never decided. All right. And that's why I think it's most appropriate that due process is where this case should have gone from day one so that that issue can be addressed. Now, before Judge Coyle, obviously you took the position that a due process hearing is required to exhaust administrative remedies, right? Yes. Now, did you point to something in the IEP or somewhere that, you know, how a due process hearing would help in this case? The IEP would be resolved by a due process hearing. You're going to need to examine that IEP. I looked at it and couldn't make any sense out of it. I don't have the expertise or knowledge to deal with the language in there and what the goals and objectives are and what they mean and whether or not those things are applied during the lunch and recess time. And I think Judge Coyle had a problem with that as well, that how can I figure out what is going on during the lunch and recess time and whether or not the goals and objectives are being carried out during lunch and recess time because I don't have the information, the record to deal with that. That's the kind of stuff that would be developed in a due process hearing and a full record for the court to review and make a decision, at least with that, to start with. And we don't have that here. And I think that's why it's so appropriate that this particular case should first go to the due process hearing procedure first. Can it go in this form or does it have to go in the form of, what, 70 individual hearings? The problem is we got to a point when they did the minimum days that when you add up the number of instructional minutes per year, if you count lunch and recess time, they've got plenty of time compared to their non-disabled peers. If you don't count that, you don't have enough time. So that's the result we ended up with at that particular point in the process. What you've got to look at is each individual IEP because they set how much of the school day is going to be included as their instructional time. And goals and objectives can be set forth in those IEPs that are going to allow you to count lunch and recess time. So you're going to have to look at each individual. The problem is, as far as this record shows, the county superintendent of education didn't make individualized determinations case by case. By looking at each IEP, she said, well, all autistic children cut off X minutes, right? No. As to each of these three blankets. Are you saying there were individualized determinations made in this case by the county superintendent of schools? Yeah. There was with respect to Deborah Brown, the autistic specialist that dealt with these during lunchtime as instructions. So you can count that in regards to these particular kids. What occurred here was there was a change with the school district, so to say, as to how they were going to operate their school days. And they ended up with a few more minimum days than they had before. As you can see in these declarations here, when you look at the number of minutes per year of these three different school districts that these three plaintiffs came from, their school days totaled very significantly as much as 6% difference between these three different school districts because they had the right to set their school days and set their minimum days. And some do more, some do less. Here we've got an office of education in a factual scenario where they had a lot of school days and they did the minimum days and they cut them back a little bit more, but not so much more that it was going to impact the number of school days that they should have had with the non-disabled peers. So I'm saying the change, even though it was an across-the-board change for the autistic kids, is still okay, so long as you do not lessen the total number of days that you're giving to the non-disabled peers. They can work within that framework, and the office of education did. What you've got to do is you've got to look at each individual IEP of each child to see whether or not when you add up their particular school instructional hours per year, whether those add up to at least as much as their non-disabled peers get at their home school. We're not deciding the merits here. We're really focused on the issue of who and how it should be decided. And I wonder if you could address that in just a broad fashion. We have a broad policy change applying to several children at the same time, and plaintiff argues with some merit, it's a more efficient and sensible way to deal with that in a group. Why should we go through the due process hearings, which are going to take some time, and then we might wind up in court again? The contention here, in my opinion, is that there's been a refusal either to initiate or change an IEP, or a refusal to provide a fair, appropriate public education, because the contention is that plaintiffs are not being provided fair, appropriate public education because they're not getting enough instructional minutes compared to their non-disabled peers. The plaintiffs are asserting injuries that can be redressed by the IDEA's administrative procedures and remedies, and that's why exhaustion is required. What they're asking for is lost educational benefits, in part, in their claim of damages. And that can be provided as a remedy under IDEA, where they simply will provide makeup instruction for lost time. And I think with the Rob case, which is, I think, the most fairly recent case with this of the remedies can be redressed by the IDEA, then it must go through the due process hearing person. And, of course, I pointed out the rationale behind that in my brief to a great extent, I think, as to the reasons why we have to do that. And I think this Court, along with Judge Coyle, is struggling with what in the world went on in the class, what are the goals and objectives, where can we sort of figure out whether or not the SCOE was right or wrong? Well, you'd have a lot of those answers for you in a record if we had a due process hearing. Why, one of the purposes of requiring exhaustion is to give the State an opportunity to fix an allegedly unlawful policy. Why isn't the Edgar complaint process a reasonable substitute for the due process hearing that you request? I think I addressed that in some, quite an extent, I think, in my brief. But what I'll say is that it's, number one, is it's in 1415, subsection L, I think it is, it makes it very clear that the exhaustion requires due process. And in 1415, it also talks about the CRP process. There's other remedies or other administrative processes available to the agreed parties if they so choose to go to those. But it's very clear under 1415L that due process is the one administrative remedy that has to be exhausted before you go to court. I think that, number one, is the reasons why you have to do that and why the CRP is not the... All you're saying is you have to do it because you have to do it. Well, no, and it's a different process. You can see what happened in this CRP process. There was no findings of fact. There was no adversarial hearing, adversarial process. There was no taking of evidence. There was no attorneys on both sides calling witnesses a decision of findings and fact. Here, what we had was we had the CRP unit make some calls, get some information, make a determination, and then issue a noncompliance order, get some documents in and say they're in compliance and didn't even address this particular issue that the court has now asked to be addressed. And I think there's... But hasn't the State had the opportunity to fix the problem? And the difficulty is, is that the State did not like the result or outcome of the first process where perhaps a different outcome can be achieved. The plaintiffs didn't like the first process, and that's why they're in here. And I don't know why, to this day, that they just didn't submit to the due process a long time ago and get this resolved then and not to be here now. It's set forth in my brief, and I think I pointed out how different that process is, and you can't compare it to this with the amount of fact-finding and decision-making. You've got administrative law, just essentially, that is well-verged in the area. You're allowed to bring consultants in to testify and consult with the parties and have representation. There's evidentiary and discovery procedures in that due process hearing. None of that is in the CRP process. And I would like to make a point that in the Porter case, which is a Ninth Circuit case here back in 2002, it did touch on the fact that there may be situations in which the CRP would be sufficient for purposes of exhaustion where they did not do the due process. But in that case, it pointed out that the situation would be one where all the issues were resolved in the CRP unit process. And here, it's clearly it was not. And Judge Coyle pointed that out in his opinion. Also, it said three things. Either the issues have been resolved in the CRP process, or the Department of Education has been shown to be biased on the issue, or they predetermined the issue. And none of those situations are present in this case. They haven't predetermined this issue. They haven't even dealt with it. And if they're biased in any respect, they're biased on the part of the plaintiffs, because they came to the conclusion that under no circumstances can you include lunch and I think when you look at the Lewis letter and the Cabrillo opinion, which is a due process opinion, it was clear that you can do that, and that they were wrong. And I think it just shows how insufficient that process is. If we're really going to address the issues carefully, look at all the sides, make a good decision on the record, and then at that point, we go to the courts and ask the courts to say from one part or the other that no, that the judge was wrong in that due process hearing. Then you've got something to work with. Here you don't. And I would think that it's instructive that there is no case that I know of in any court, state court or federal court, that deals with this issue. We don't. We have the Lewis letter, which is an opinion by the U.S. Department of Education. This issue you're referring specifically to what? Whether or not instructional time can be used during lunch and recess. We've got the Lewis opinion. We've got the Cabrillo due process opinion. We have no court case at all out there that anyone knows about that addresses this issue. And if you could come to court in this situation, I would think that you would have lots of cases we could look at that would have decided this issue before. My contention is that these issues probably have been decided at one of those three administrative processes. Either they went to the Office of Civil Rights and got it resolved at that level, as those just submit to and get it resolved without going any further. Or it may have been resolved at the complaint resolution process in a particular case. Or it may have been resolved in a due process hearing. But we just don't have any that have gone up to the courts. And if this is the kind of case that was won for that, I think you would see the cases out there somewhere. Special education has been going on for a long time. Every time a student, every time you allege a student is not getting enough instructional time compared to the non-disabled peers, you can say that's discrimination. Because you're discriminating against a non-disabled child as against, or a disabled child as against a non-disabled child. Just to say that in this case, this discrimination is outside the IDEA, I think we'd have a ton of cases that would have dealt with this issue. We have none. I think I'm over my time. OK. Thank you. Ms. Olson, thank you very much. Rebuttal. I think there's no case because the regulations are clear. Three times in the Title V Brexit that govern the special education programs that you simply cannot count lunch and recess unless it's otherwise indicated on the IEP. That's why we have no cases. Districts just don't do this. Another thing that I wanted to say was that this whole idea of lunch and recess was really something that came up new. The first thing that was told to the parents was the budgetary constraints. And then again, I've already talked about that. I'm sorry, the first thing that was told them was what? Was the budgetary constraints. But that was the first reason they were told. Because, you know, you're going to make this, quote, sacrifice for budgetary purposes. The second thing, when the compliance complaint went up, the district didn't tell compliance that they were trying to make these children make a sacrifice. What the district told compliance was, yes, we're counting all these minutes. And when the compliance realized, and per year, they're actually getting more. And compliance realized that they were counting extended school year minutes. And that was the finding of noncompliance, was that you cannot count extended school year minutes as part of your 54,000. But it is true, isn't it? After further communication, we'll say that state authorities changed their position after they heard further from the. Then they added some time. They added some time. And then the whole lunch and recess minutes never was even raised during compliance. What do you mean they added some time? What kind of time? They added minutes to the day because they were told by compliance that they could not use extended school year minutes as part of the annual minute count. So they did follow that. They did go ahead and add some minutes, but yet not enough. They still did not add enough, a full, they still did not give a full day. And they continued to give a minimum day every single Tuesday for purposes of training their staff, taking away from the children's time. It was only when the motion for preliminary injunction was filed that we heard this whole issue on lunch and recess minutes. And I think that's what really kind of just clouded this whole case. Because clearly what we have is a general policy that came down on the kids, not that they were counting lunch and recess, not that they were getting programming during lunch and recess. This is a Johnny-come-lately defense, essentially, that happened now and the opposition to the motion for preliminary injunction. Why should the court be the agency that addresses that? I mean, you're obviously desirous of getting a resolution promptly. That's why you filed for a preliminary injunction. That's right. But you know as well as anybody that courts don't operate and the appellate court doesn't operate on that kind of schedule. So now it's a year later, you finally get to us, and the best you can do from us is go back to the district court. Why not go ahead with the administrative process? That would take, as one of your hunters pointed out, that's 70 due process hearings. Talk about time. Talk about effort. Talk about every parent having to hire an attorney. Well, it could, but after the first two or three, if the county got the same message back, they're going to figure out that we got a loser on our hands here and we need to do something about it. One would hope that this is the fourth year after this issue has been raised, it went to compliance, we filed this complaint in federal court, we're now on our fourth year of shortened days. They're going to go on and on and on. I don't believe that any one due process hearing is going to make a difference to them. They'll wait for all 70, perhaps. They're balancing their budget. And this is what's most important to them. They really can't, because as soon as they've been told for children one, two, three, four, and five, you've got to make the day longer, then they've got to have the staff there to make the day longer. So, and I don't know that you really need, if your merits position is correct, then you're going to win every single case, and they're going to figure that out and have to remedy that pretty quickly. So. But what's the challenge? I mean, that's the thing. There's nothing in the IEP to challenge. There's nothing in the IEP that says the kids are getting a shortened day. Well, what about this? You know, since you pointed out to me that, and I hadn't read it before, that the IEPs were attached to a couple of declarations, and the two are pretty much the same in this regard, there's a comment, for instance, in the Christopher S. IEP, right? Parents stated, quote, I do not agree with Tuesday minimum day. Now, is it, since there's that objection, the IEP, is it inappropriate right then to take it to the due process hearing? She could have done that, but again, the remedy really is inadequate for all the children. I mean, she could have done that for her own child. Actually, there is one parent that did not go to due process, but because she knew within the district, she was able to get an extra hour at her home school. So, I mean, we could patch up things like that. This is an overall policy decision that came down that needs to be dealt with on an overall basis, and as the Heft and the Porter case both said, the compliance review procedures can be a substitute for due process for facially invalid policies. So that's, that would be our position, and this is, and bringing it under IDEA is just a muddying the waters. All right? Okay. Thank you very much. Thank you. We thank both counsel for the argument in this case. I think it's been helpful. The case is submitted for a decision. Next on our argument calendar is Shapiro, another IDEA case, Shapiro v. Paradis, Valley Unified School District, number 69. Let's see, who's the, I guess, I guess the primary appellant is the plaintiff, right? All right. Let's proceed. Although we have a cross appeal. Good morning, Your Honors. As I sat and listened to the arguments today, I learned something that... We're recording this, so before...
judges: Tashima, Clifton, Leighton